UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN BRAUN, | No.  2:26-cv-0470-TLN-SCR |
| Plaintiff, | |
| v. | ORDER AND |
| ST. GEORGE UNIVERSITY SCHOOL OF MEDICINE, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff is a medical student, and sues St. George University School of Medicine for alleged disability accommodation failures and for retaliation.  Plaintiff is proceeding pro se in this action, which was accordingly referred to the undersigned.  ECF No. 1.  Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP") and submitted a declaration listing his income and averring an inability to pay the costs of this proceeding.  ECF No. 2; *see* 28 U.S.C. § 1915(a)(1). This application is incomplete as it lacks the second page detailing Plaintiff's assets, expenditures, and liabilities.  Plaintiff is therefore ORDERED to file a completed IFP application.

However, in screening Plaintiff's Complaint, as required by 28 U.S.C. § 1915(e)(2), the Court concludes that it fails to state a claim.  For the reasons below, Plaintiff is granted leave to amend the Complaint to include factual allegations supporting his claim.

Plaintiff has also moved for a temporary restraining order compelling Defendant to "Reinstate Applicant's cancelled clinical rotations," and enjoining the "enforcement of added

1

bridge time[,]" Plaintiff's dismissal from his medical school program, and enforcement of the August 27, 2026 completion deadline such that Plaintiff may graduate upon completion of all academic requirements.  ECF No. 3 at 3-4.  Due to the deficiencies within the Complaint, the undersigned recommends that this motion be denied without prejudice to refiling upon amending the Complaint.

## I.    LEGAL STANDARD

### A.  Screening

A court may authorize a person to proceed in an action without prepayment of fees if that person "submits an affidavit that includes a statement of all assets…that the person is unable to pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1).  The federal IFP statute, however, requires federal courts to dismiss such a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  In reviewing the complaint, the Court is guided by the requirements of the Federal Rules of Civil Procedure.  The Federal Rules of Civil Procedure are available online at www.uscourts.gov/rules-policies/current-rules-practice-procedure/federal-rules-civil-procedure.

Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  Plaintiff's claims must be set forth simply, concisely and directly. Fed. R. Civ. P. 8(d)(1).  Forms are available to help pro se plaintiffs organize their complaint in the proper way.  They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the court will (1) accept as true all the factual allegations contained in the complaint, unless they are clearly baseless or fanciful; (2) construe those allegations in the light most favorable to the

2

plaintiff; and (3) resolve all doubts in the plaintiff's favor. *See Neitzke*, 490 U.S. at 327.

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (court must accept the allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (court must construe the complaint in the light most favorable to the plaintiff). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

B. Temporary Restraining Order

A TRO is an extraordinary remedy that may only be granted if the moving party satisfies one of two legal standards. A plaintiff seeking a TRO must generally establish all four of the following elements: (1) he is likely to succeed on the merits of his underlying case; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). A plaintiff may also be entitled to a TRO by showing serious questions going to the merits, irreparable harm, and a balance of equities that tips strongly in the plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

////

## II.    FACTUAL BACKGROUND

A.  Complaint

Plaintiff filed the Complaint on February 14, 2026.  The Complaint alleges that Plaintiff is a medical student at Defendant's institution who requested testing accommodations under the Americans with Disabilities Act ("ADA").  ECF No. 1 at 5.  Defendant initially denied these accommodations, causing Plaintiff to receive failing grades in two core clinical rotations.  *Id.* Defendant eventually granted the requested accommodations, after which Plaintiff did not fail any more classes.  *Id.* at 7.

On January 1, 2026, Defendant implemented a new policy affecting Plaintiff's clinical Progression.  *Id.*  Plaintiff therefore requested additional ADA accommodations.  *Id.*  In response, Defendant added "bridge time" to Plaintiff's clinical schedule and cancelled Plaintiff's scheduled clinical rotation.  *Id.* at 7, 24.  This bridge time extended the earliest projected completion date of Plaintiff's M.D. program from July 24, 2026 to October 2, 2026.  *Id.* at 7, 18.  Because this completion date exceeds the six-year maximum completion period, which ends on August 27, 2026, Plaintiff would be permanently dismissed from the program and ineligible for an M.D.  *Id.* at 7, 15.

On January 27, 2026, Plaintiff filed a complaint with the U.S. Department of Education Office for Civil Rights ("OCR") regarding disability discrimination.  *Id.* at 7, 21.  Meanwhile, Defendant requested additional disability documentation to support Plaintiff's second request, which Plaintiff provided.  *Id.* at 7.  Upon learning about the OCR complaint, however, Defendant denied the second accommodation request.  *Id.* at 7.  On February 13, 2026, the Dean of Clinical Studies notified Plaintiff that the faculty of medicine had recommended Plaintiff's dismissal from the program, both based on his failure of more than one clinical rotation and his inability to graduate within the six-year maximum timeframe.  *Id.* at 7, 11-12.

Based on the alleged disability discrimination and failure to provide reasonable accommodations, the Complaint asserts claims under the ADA, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  ECF No. 1 at 4, 7.  Plaintiff therefore seeks reinstatement of the previously scheduled clinical rotations; suspension of "added bridge

time" that would delay Plaintiff's completion past August 27, 2026; injunctive relief preserving Plaintiff's ability to graduate upon completion of all academic requirements; and a temporary restraining order enjoining Defendant from dismissing Plaintiff based on the six-year completion requirement, pending resolution of this action. *Id.* at 6, 8.

B. Motion for Temporary Restraining Order

On February 14, 2026, Plaintiff filed a motion for a Temporary Restraining Order that largely repeats the factual allegations of the Complaint. ECF No. 3 at 1-2. It does add that earlier that day, Plaintiff formally appealed the dismissal recommendation through Defendant's CAPPS process. ECF No. 3 at 1. The motion argues, however, that this does not preserve Plaintiff's right to graduate during the pendency of the appeal, particularly if Plaintiff cannot finish his clinical rotations by August 27, 2026 due to the bridge time. *Id.* at 1, 3.

On February 18, 2026, Plaintiff filed additional exhibits,[1] including a timeline showing that he was diagnosed with ADHD and dyslexia in 1990. ECF No. 4 at 25. Emails show that the original accommodation, granted in March 2025 after he failed two rotations, was a 50% increase in the time limit when taking NBME exams, along with permission "to use personal non blue tooth accessible headphones[.]" *Id.* at 23, 25.

The timeline further clarifies that in December 2025, Plaintiff applied for a waiver from Defendant's upcoming insurance policy, which would allow him to retain his Medicaid coverage instead of enrolling in the university's insurance plan. *Id.* at 9, 25. This waiver was granted on December 19, at which point Plaintiff "scheduled file [sic] clinical rotations until accommodations requested were resolved." *Id.* at 25. Changes to Defendant's insurance policy went into effect on January 1, 2026. *Id.*

On January 13, 2026, Plaintiff's request to schedule clinical rotations was denied solely because of a "health insurance hold[.]" *Id.* at 21, 25. This was the first indication Plaintiff received that the waiver permitting him to keep his Medicaid coverage had been revoked. *Id.* at

---

[1] Not every exhibit on file is legible due to either font size or quality of document scans. *See* ECF No. 4 at 5, 11-12. The Court has only summarized and considered the evidence that is legible.

25. He emailed various Defendant staff members on January 15, asking for reinstatement of his waiver so he can continue to see his physician and receive essential medication under his current plan. *Id.* at 19-21, 25. On January 20, Kate McLaughlin, the Director of Student Accessibility and Accommodation Services, requested documents showing that Plaintiff's care could only be managed by his current physician, and that there would be medical repercussions from making him look for a new provider capable of treating him. *Id.* at 17-18, 25. After further exchanges over email, the two agreed to talk via Microsoft Teams on January 26, 2026. *Id.* at 16-17. It is unclear whether this Teams meeting occurred.

While waiting for approval of accommodations thereafter, Plaintiff received notice that bridge time had been added to his schedule such that he could not enroll in the previously scheduled clinical rotations. *Id.* at 25. This prompted his OCR complaint, Defendant's subsequent denial of his accommodation, and ultimately the recommendation to dismiss him from the clinical program. *Id.* at 25-26.

### III.    ANALYSIS

A. Screening the Complaint

Although the Complaint does not specify under which title of the ADA Plaintiff seeks relief, Title III is most applicable. Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). Private postgraduate educational institutions are expressly covered by Title III. 42 U.S.C. § 12181(7)(J). Discrimination includes an entity's "failure to make reasonable modifications in policies, practices, or procedures" as necessary to provide the good or services an entity provides unless such accommodations "would fundamentally alter the nature" of those goods and services. 42 U.S.C. § 12182(b)(2)(A)(ii). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007).

The ADA also prohibits retaliation against individuals for opposing any act or practice prohibited under the ADA, or for making a charge against that entity under the ADA. 42 U.S.C. § 12203(a). A prima facie case for such a claim requires that the plaintiff engaged in such "protected activity" and suffered an adverse action, and that there is a causal link between the two. *See Brown v. City of Tucson,* 336 F.3d 1181, 1186–87 (9th Cir. 2003); *see also Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 825-26 (9th Cir. 2009) (declining to limit the anti-retaliation provisions of the ADA to those with disabilities).

A claim under the Rehabilitation Act further requires that the defendant is a "program or activity receiving Federal financial assistance or…conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. Beyond this, however, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes[.]" *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

The Complaint's conclusory allegations include that Defendant failed to provide reasonable accommodations and retaliated for protected activity. ECF No. 1 at 7. The "protected activity" is presumably Plaintiff's complaint to OCR, after which Defendant denied Plaintiff's accommodation request and recommended his dismissal despite the submission of requested documents. *Id.* At no point, however, does the Complaint outline the nature of Plaintiff's disability, the accommodation that was denied until after he had failed two clinical rotations, the second accommodation requested and eventually denied, the "new policy" that affected his clinical progression and prompted the second accommodation request, or the nature of the additional documents he provided to Defendant upon request. *See id.* at 5, 7. Without such information, Plaintiff cannot state a claim under either the ADA or the Rehabilitation Act.

These details are included in Plaintiff's TRO application and supplementary exhibits, particularly Plaintiff's timeline of events since his ADHD and dyslexia diagnosis. ECF No. 4 at 25. Although this does not itself cure the defects in the Complaint, it does suggest that Plaintiff can amend his Complaint to assert these allegations. The Court will therefore allow Plaintiff to

amend his Complaint.  Plaintiff is informed that when filing a First Amended Complaint, it should be "complete in itself without reference to the prior or superseded pleading."  L.R. 220. Although Plaintiff may attach exhibits for reference, as with his Complaint, his pleadings should themselves include all relevant information such that the Court does not need to sift through the attached files to identify the elements of his claims.

However, the Court also informs Plaintiff that, to state a claim under Title III of the ADA, he must plausibly allege that he "was denied public accommodations by the defendant because of his disability."  *Molski*, 481 F.3d at 730.  It appears that Plaintiff's contention may be that Defendant violated the ADA by failing to waive the requirement that he purchase insurance coverage endorsed by Defendant.  It is not clear how such a failure would violate the ADA, unless the new insurer would not cover medication for Plaintiff's disability, thus affecting his ability to participate in his remaining clinical rotations.

B.  Motion for Temporary Restraining Order

A request for injunctive relief should be denied when based on a complaint that fails to state a claim.  *See, e.g., Jaax v. United States*, 2008 WL 4630559, at *2 (C.D. Cal. Oct. 17, 2008) (denying ex parte motion for a TRO where movant did not show "a probability of success on the merits because his complaint, as presently formulated, fails to state a claim on which relief may be granted"); *Smith v. California Dep't of Corr. & Rehabs.*, 2020 WL 1503431, at *4 (E.D. Cal. Mar. 30, 2020) ("[W]ithout a viable complaint the court cannot assess plaintiff's likelihood of success on the merits[.]"); *Most v. Pritzker*, 2020 WL 4582593, at *2 (S.D. Ill. Aug. 10, 2020) (denying motion for TRO and preliminary injunction because, "[a]s Plaintiff has failed to state a viable claim for relief, he has no reasonable likelihood of success on the merits").  Because the Court is granting leave to amend the Complaint for failure to state a claim, Plaintiff has not shown a reasonable likelihood of success on the merits to support a claim for injunctive relief.  *See Jaax*, 2008 WL 4630559, at *2; *Smith*, 2020 WL 1503431, at *4; *Most*, 2020 WL 4582593, at *2.

The undersigned recommends that the motion for a TRO be denied without prejudice to refiling such motion after the filing of an FAC that complies with this Order.  Plaintiff is

informed that should he later file for such relief, he has the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). He must demonstrate by preponderance of the evidence, *inter alia*, that he is likely to succeed on the merits of his FAC and will suffer irreparable harm in the absence of preliminary relief. *See Garcia*, 786 F.3d at 740. A timeline of alleged facts, as submitted here (see ECF No. 4 at 25-26), will likely be insufficient to demonstrate these elements without further evidence.

## IV.    AMENDING THE COMPLAINT

If Plaintiff chooses to amend the Complaint, the amended complaint must contain a short and plain statement of Plaintiff's claims. The allegations of the complaint must be set forth in sequentially numbered paragraphs, with each paragraph number being one greater than the one before, each paragraph having its own number, and no paragraph number being repeated anywhere in the complaint. Each paragraph should be limited "to a single set of circumstances" where possible. Rule 10(b). Forms are available to help plaintiffs organize their complaint in the proper way. They are available at the Clerk's Office, 501 I Street, 4th Floor (Rm. 4-200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

The amended complaint must not force the Court or the Defendant to guess at what is being alleged against whom. *See McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996) (affirming dismissal of a complaint where the district court was "literally guessing as to what facts support the legal claims being asserted against certain defendants"). The amended complaint should contain specific allegations as to the actions of each named Defendant *and* allege facts to support *each* individual claim.

Also, the amended complaint must not refer to a prior pleading to make Plaintiff's amended complaint complete. An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220. This is because, as a general rule, an amended complaint supersedes the original complaint. *See Pacific Bell Tel. Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice & Procedure § 1476, pp. 556-57 (2d ed. 1990)). Therefore, in an amended complaint, as in an

original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## V.   PLAINTIFF'S LACK OF AN ADDRESS

Plaintiff represents that he is homeless and has not filed an address for purposes of service of documents related to this case.  Under this Court's Local Rules, "A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address.  If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within thirty (30) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute."  Local Rule 183(b).  Should Plaintiff obtain an address at which he can be served, he must immediately file a notice of that address with the Court.  In the meantime, the Clerk of the Court will be directed to call Plaintiff at the phone number listed on the docket to inform him of the filing of this order and findings and recommendations.

## VI.   PRO SE PLAINTIFF SUMMARY

The magistrate judge is recommending that your motion to proceed *in forma pauperis*, without paying the requisite filing fees, be denied for failure to submit a complete request.  Upon screening the Complaint, however, the undersigned finds it factually deficient for failure to articulate the factual basis of your claims.  Because your subsequent motion for a Temporary Restraining Order suggests that you may be able to include such facts, you are receiving leave to so amend your Complaint.  The resulting First Amended Complaint should be complete in itself, without reference to prior documents, and the factual pleadings therein should be sufficient without reference to any exhibits you may attach.  Failure to amend the Complaint to cure its defects will result in the undersigned recommending dismissal of this action.

## VII.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's application to proceed IFP (ECF No. 2) is DENIED without prejudice for failure to submit a complete application;

2. Should Plaintiff wish to continue to pursue this action, he must file both pages of his IFP

application, as well as a First Amended Complaint, within 30 days of the date of this order;

3. Plaintiff shall file a notice of address change promptly upon obtaining an address at which he may be served; and

4. The Clerk of the Court is instructed to call Plaintiff at the phone number listed on the docket to inform Plaintiff of the filing of this order and findings and recommendations.

**IT IS FURTHER RECOMMENDED** that:

1. Plaintiff's Motion for a Temporary Restraining Order (ECF Nos. 3-4) be DENIED with leave to refile such a motion upon filing of a First Amended Complaint.

The findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

11