UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JORDAN BRAUN,

               Plaintiff,

     v.

ST. GEORGE UNIVERSITY SCHOOL
OF MEDICINE,

               Defendant.

No. 2:26-cv-00470-TLN-SCR

**ORDER**

This matter is before the Court on *pro se*[1] Plaintiff Jordan Braun's ("Plaintiff") *Ex Parte* Motion for Temporary Restraining Order ("TRO").[2]  (ECF No. 10.)  For the reasons set forth below, the Court GRANTS Plaintiff's motion.

///

---

[1]  The Court liberally construes pro se filings.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[2]  Plaintiff notified Defendant of this motion on February 23, 2026 (ECF No. 10 at 8), but Defendant has not responded and has not yet appeared in this case.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[3]

This action arises out of Defendant St. George University School of Medicine's ("Defendant") alleged failure to reasonably accommodate Plaintiff's disability in the course of his medical school program.  (ECF No. 9 at 1.)  Plaintiff alleges Defendant violated the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").  (*Id.*)

Plaintiff is currently enrolled in Defendant's Doctor of Medicine program.  (*Id.*)  In January, he was approximately six months from completion of the program.  (*See* ECF No. 4 at 7.)  Plaintiff alleges he has a medical condition[4] that constitutes a disability under the ADA "because it substantially limits major life activities including neurological and cognitive functioning without continuous treatment."  (ECF No. 9 at 1.)  Yet, Plaintiff "remains academically and professionally qualified to participate in clinical training with a reasonable accommodation."  (*Id.* at 2.)  In March 2025, Defendant approved disability accommodations for Plaintiff in the context of testing.  (ECF No. 4 at 23.)

The instant action concerns Defendant's alleged denial of a request for a new reasonable accommodation.  (*Id.*)  On January 1, 2026, Defendant changed its insurance requirements for students and Plaintiff contends he is now required to enroll in a Defendant-sponsored insurance program.  (*Id.* at 7, 25.)  Plaintiff requested an insurance waiver from Defendant's new insurance coverage policy.  (*Id.* at 7.)  Plaintiff claims it is medically necessary for him to continue his current insurance coverage through Medicaid to maintain consistent access to his treating providers and prescriptions for his disability.  (ECF No. 9 at 2; ECF No. 4 at 7, 11.)  Plaintiff submits a letter stating:

> I'm the treating physician for Jordan G. Braun, whom I have been treating for Attention Deficit Hyperactivity Disorder (ADHD).  He is prescribed a Schedule II medication that is medically necessary for the effective management of his ADHD. . . . The medication is essential for maintaining

---

[3]     The allegations in Plaintiff's pleadings as to the details of his disability, the requested accommodation, and the alleged denial are vague.  However, Plaintiff incorporates documents in his Complaint and motion for TRO by reference.  (ECF No. 10 at 1; ECF No. 4.)

[4]     Based on the record, the Court understands the medical condition to be Attention Deficit Hyperactivity Disorder ("ADHD").  (*See* ECF No. 4 at 11 (treating physician letter); ECF No. 4 at 17 (correspondence to Defendant).)

2

cognitive functioning . . . . Any change in his insurance coverage that disrupts his access to my care will result in an unavoidable interruption in his treatment. Even a very small delay in access to this medication, such as that caused by changing insurers which would result in the need to establish care with a new physician and/or navigating interstate prescribing restrictions, would have immediate and significant medical, personal, and professional consequences for Jordan. . . . These disruptions would not be transient or minor and they would substantially, possibly irrevocably, impair Jordan's ability to function in his educational program and could jeopardize both academic progress and clinical performance.

(ECF No. 4 at 11–12.)

It appears Plaintiff had been covered by Medicaid for years during his enrollment in medical school without issue, until Defendant changed its policy. (*Id* at 7.) Plaintiff first requested an insurance waiver as an accommodation in December 2025. (*Id.* at 5, 25.) Initially, Plaintiff believed he was granted an insurance waiver, but Plaintiff learned his waiver was not granted or was revoked when an insurance hold was placed on his account in January 2026. (*See id.* at 21, 25.) Over the following months, Plaintiff asserts he requested reconsideration, submitted additional documentation in response to requests, and filed an "OCR complaint."[5] (*Id.* at 7, 25.) Plaintiff now alleges his request for an insurance waiver as a reasonable accommodation was denied. (ECF No. 9 at 2; ECF No. 4 at 25.)

On February 13, 2026, Defendant recommended Plaintiff for dismissal from the program and Plaintiff alleges he was blocked from participating in clinical rotations as a result of the insurance hold.[6] (ECF No. 4 at 9, 26; ECF No. 10 at 6.) Plaintiff asserts that "Defendant has set an administrative withdrawal date of March 13, 2026" and "[w]ithdrawal will permanently terminate Plaintiff's enrollment and prevent completion of medical training." (ECF No. 10 at 2.)

On February 14, 2026, Plaintiff instituted this action. (ECF No. 1.) On February 23, 2026, Plaintiff filed a First Amended Complaint (ECF No. 9) and the instant Motion for TRO

---

[5]     The Court assumes "OCR complaint" means Plaintiff filed a complaint with the U.S. Department of Education's Office of Civil Rights.

[6]     Students must complete the degree program within six years of matriculation. Plaintiff is now at risk of graduating beyond the six-year deadline.

3

(ECF No. 10).  The same day, Plaintiff notified Defendant he had filed an amended complaint and motion for TRO.  (ECF No. 10 at 8.)  On March 2, 2026, U.S. Magistrate Judge Sean C. Riordan found that Plaintiff had adequately stated a claim under the ADA for *in forma pauperis* screening purposes only.  (ECF No. 12.)

Plaintiff's motion for TRO seeks an order to maintain the status quo by prohibiting Defendant from withdrawing Plaintiff from his medical program and allowing Plaintiff to continue clinical training.  (ECF No. 10 at 2.)  Defendant has not responded or appeared.  The Court now considers whether a TRO should issue to maintain the status quo.

## II.    STANDARD OF LAW

A TRO is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a TRO is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In general, "[TROs] are governed by the same standard applicable to preliminary injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010); *see also* L.R. 231(a).

Courts consider whether a plaintiff has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain relief.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a plaintiff's motion, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the

balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for injunctive relief.  *Id.* at 1134–35.

**III.    ANALYSIS**[7]

The Court considers each of the *Winter* elements with respect to Plaintiff's motion.

A.    Likelihood of Success on the Merits

Plaintiff alleges Defendant has violated the ADA for failure to reasonably accommodate his disability in the provision of his medical program.[8]  Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]"  42 U.S.C. § 12182(a).  Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"  42 U.S.C. § 12182(b)(2)(a)(ii).

To prevail on a Title III failure-to-accommodate claim, Plaintiff must show: (1) he is a qualified individual with a disability within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) Defendant failed to reasonably accommodate Plaintiff by providing a necessary modification to a policy that would not alter the nature of the program.  *See Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075,

---

[7]    The Court finds Plaintiff has sufficiently met the requirements for issuing a TRO without notice.  *See* Fed. R. Civ. P. 65(b); L.R. 231.  Plaintiff notified Defendant about instant motion and sent a copy of the motion via email.  (*See* ECF No. 10 at 8.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice).

[8]    Plaintiff also claims that Defendant violated Section 504.  Because the elements of Section 504 claims overlap with the elements of ADA claims, with the added requirement that defendant receives federal financial assistance (29 U.S.C. § 794; *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)), the Court addresses only the ADA claim at this stage.

1080 (9th Cir. 2004).  The Court considers each of these elements in turn.

### 1. Qualified Individual with a Disability

A "qualified individual with a disability" is a term of art under the ADA, meaning "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for . . . participation in programs . . . by a public entity."  42 U.S.C. § 12131(2).  "Disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[9]  42 U.S.C. § 12102(1).

Plaintiff alleges that he "is a qualified individual with a disability."  (ECF No. 10 at 1.)  He shows he has ADHD, which he alleges "substantially limits major life activities including neurological and cognitive functioning without continuous treatment."  (ECF No. 9 at 1; ECF No. 4 at 11.)  Plaintiff submits a letter to support this claim, appearing to be from his treating physician, confirming Plaintiff's diagnosis and treatment.  (ECF No. 4 at 11.)  This includes medication "that is medically necessary for the effective management of his ADHD. . . [and] [t]he medication is essential for maintaining cognitive functioning[.]"  (*Id*.)  ADHD and related conditions that substantially impair concentrating, thinking, communicating, and neurological functions are disabilities under the ADA.  *See* 42 U.S.C. § 12101(2); *see*, *e.g.*, *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 972 (N.D. Cal. 2013) (finding attention deficit disorder a disability requiring accommodation in academic testing).  Moreover, Defendant has previously acknowledged and accommodated Plaintiff's disabilities in the context of testing.  (*See* ECF No. 4 at 23.)

Plaintiff also asserts that he is otherwise eligible to continue with the program but for Defendant's denial of his requested accommodation.  (ECF No. 9 at 1.)  Plaintiff alleges he had

---

[9]    "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12101(2).

completed all required coursework and the only thing preventing him from completing his clinical work is Defendant's insurance hold.  (*Id.*)  Assuming Plaintiff can prove his allegations with a further developed factual record, he is likely to succeed on his claim that he is a qualified individual with a disability within the meaning of the ADA.

### 2. *Place of Public Accommodation*

Under the ADA, a postgraduate private school is a place of public accommodation.  42 U.S.C. § 12181(7)(J).  Plaintiff alleges "Defendant operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)."  (ECF No. 9 at 3.)  On the record before the Court, it appears Defendant is indeed a postgraduate private school administering a Doctor of Medicine program open to the public, in which Plaintiff is enrolled.  Thus, Defendant is an entity of public accommodation subject to the ADA.

### 3. *Denial of Reasonable Accommodation*

Finally, to determine whether denial of a requested accommodation constitutes a violation of the ADA, the Court must determine that the accommodation was (1) necessary, (2) reasonable, and (3) did not fundamentally alter the nature of Defendant's program.  *See PGA Tour, Inc. v. Martin,* 532 U.S. 661, 683 n.38 (2001) (citing 42 U.S.C. § 12182(b)(2)(A)(ii)).

Here, Plaintiff alleges Defendant discriminated against him by denying his full and equal participation in the academic program because Defendant denied his requested reasonable accommodation.  (ECF No. 9 at 2; ECF No. 10 at 1, 2.)  First, Plaintiff alleges a waiver or exception from Defendant's new insurance coverage policy was necessary to maintain uninterrupted access to required medical treatment to ameliorate the effects of his disability.  (*See* ECF No. 10 at 1.)  Plaintiff asserts, and the letter from his treating physician states, that continued care and uninterrupted treatment is medically necessary for Plaintiff.  (ECF No. 9 at 2; ECF No. 4 at 11.)  Plaintiff notified Defendant that switching insurance providers would disrupt or limit his ability to access treatment for his disability.  (ECF No. 4 at 17, 20.)

Second, Plaintiff supplies sufficient facts at this stage to also find the requested accommodation is both possible and reasonable.  Defendant had a process for requesting insurance waivers, which suggests that an insurance waiver as an accommodation is both possible

and reasonable.  (ECF No. 4 at 8.)  Indeed, Plaintiff initially pursued such a waiver in December 2025 and believed it was initially granted.[10]  (ECF No. 4 at 5, 25.)  However, Plaintiff learned his waiver was "revoked" in January 2026 when an insurance hold on his account prevented him from participating in clinical rotations.  (ECF No. 4 at 25.)  It also appears Plaintiff has been covered by Medicaid for "years" during his enrollment in Defendant's program without issue.  (ECF No. 4 at 21.)  Therefore, on this record, Plaintiff's request to continue the status quo with his insurance coverage to ensure consistent and uninterrupted treatment for his disability appears reasonable.

Third, Plaintiff alleges the requested accommodation "did not seek exemption from academic or clinical requirements and did not alter curriculum, grading standards, or patient care responsibilities."  (ECF No. 9 at 2.)  He further attests that preserving the status quo would allow him to continue with the program "without affecting other students or program operations."  (ECF No. 10 at 4.)  The reasonable inference that flows from these allegations is that the accommodation would not fundamentally alter the nature of the program.  On this record, the Court fails to see how a different insurance provider for a student could fundamentally offer an academic institution's education, training, curriculum, or standards.  And it is Defendant's burden to raise such a defense.

Accordingly, Plaintiff demonstrates a likelihood that he will succeed on his claims that Defendant violated the ADA and Section 504 when it failed to accommodate his disability, assuming his allegations hold with a further developed and contested factual record.  At the very least, he has raised serious questions as to the merits.

B.      Irreparable Harm

Plaintiff also sufficiently establishes irreparable harm.  Absent injunctive relief, on March 13, 2026, Plaintiff will be administratively withdrawn from his medical program, which Plaintiff alleges will permanently terminate his enrollment in the program and prevent him from obtaining

---

[10]    Plaintiff provides an illegible "Exhibit F" (ECF No. 11 at 5), which is described as an "email granting waiver and lifting hold pending accommodation resolution (Dec. 19, 2025)."  (*Id.* at 3.)  At this stage in the proceedings, the Court accepts the description of the document as allegations.

his medical degree.  (ECF No. 10 at 1, 6.)  He states loss of enrollment will permanently affect his ability to obtain licensure and residency replacement.  (*Id.* at 3.)  The Court agrees with Plaintiff that such a loss cannot be entirely remedied by monetary damages.  (*Id.* at 2.)  Other courts have found similarly. *See, e.g.*, *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 186 (D.D.C. 2011) ("The lost opportunity to engage in one's preferred occupation goes beyond monetary deprivation").  Because the harm to Plaintiff will likely include loss of a career, loss of opportunity, and psychological harm, this factor tips sharply in favor of Plaintiff.

### C.    Balance of Equities

Plaintiff must also demonstrate the balance of hardships tips in his favor.  *See Alliance*, 632 F.3d at 1134–35.  Plaintiff asserts that maintaining the status quo and allowing him to continue with his studies would be a "minimal burden [on Defendant] compared to Plaintiff's permanent loss of education and profession."  (ECF No. 10 at 2.)  Additionally, Plaintiff asserts that his requested "accommodation does not alter curriculum, grading standard, or patient care responsibilities."  (*Id.* at 2.)  He seeks "only to remain enrolled in existing academic standards while this Court resolves the case." (*Id.* at 4.)  As explained above, the hardship to Plaintiff absent an injunction will be severe.  In contrast, it is unclear what harm, if any, Defendant would suffer as a result of granting Plaintiff's motion.  For these reasons, the Court finds the balance of hardships tips sharply in Plaintiff's favor.  *See Alliance*, 632 F.3d at 1135.

### D.    Public Interest

For the same reasons, the public interest factor weighs strongly in favor of granting an injunction.  "In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) (citing 42 U.S.C. § 12101(a)(9)) (finding that "the continuing existence of unfair and unnecessary discrimination and prejudice . . . costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity").  "This public interest is served by requiring entities to take steps to 'assure equality of opportunity' for people with disabilities." *Id.* (citing 42 U.S.C. § 12101(a)(8)).  Thus,

"the public clearly has an interest in the enforcement of its statutes." *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, No. 09-cv-5191, 2010 WL 475361, at *8 (N.D. Cal. Feb. 4, 2010), *aff'd,* 630 F.3d 1153, 1167 (9th Cir. 2011). Here, Plaintiff seeks to vindicate his civil rights by enforcing the ADA, as contemplated by Congress. This factor likewise tips in favor of Plaintiff.

Accordingly, Plaintiff has made the requisite showing on all four *Winter* prongs, with the balance of equities tipping sharply in favor of Plaintiff, sufficient to warrant a TRO to maintain the status quo. *Alliance*, 632 F.3d at 1135.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Temporary Restraining Order (ECF No. 10) is GRANTED.

To preserve the status quo, Defendant St. George's University School of Medicine (and its officers, agents, employees, and persons in active concert or participation) is hereby ENJOINED AND RESTRAINED from withdrawing or terminating Plaintiff Jordan Braun from enrollment in the medical school program and from preventing Plaintiff from completing necessary work to complete his program, including coursework and clinical rounds, due to an insurance hold. This Order shall expire exactly 14 days from the time of the notice of electronic filing, unless the Court extends the Order for good cause prior to its expiration. Fed. R. Civ. P. 65(b)(2).

IT IS FURTHER ORDERED that Defendant is hereby ORDERED TO SHOW CAUSE in writing as to why a preliminary injunction should not issue to continue this Court's injunction pending resolution of this lawsuit. Defendant shall file responsive papers by **March 18, 2026**. Plaintiff may file a reply by **March 23, 2026**. The parties shall indicate in their briefing whether they waive a hearing. Fed. R. Civ. P. 65(b)(3). The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

Unless the parties waive a hearing, the Court will hold a preliminary injunction hearing on **Tuesday, March 19** at **2:00 p.m.** in **Courtroom 2** of the Robert T. Matsui Federal Courthouse, 501 I Street, Sacramento, CA 95814. Fed. R. Civ. P. 65(b)(3).

The Court, in its discretion, waives the security requirement of Federal Rule of Civil Procedure 65(c) because Plaintiff moved only to maintain the status quo, seeks to vindicate his

civil rights, has shown a likelihood of success, is proceeding *pro se*, has moved this Court to proceed *in forma pauperis* (ECF No. 8), and is unlikely to be able to post a bond. *See Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1325 (9th Cir. 1985) *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985) ("The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review.").

The Clerk of the Court is directed to serve Defendant with a copy of this Order at: 3500 Sunrise Hwy, Ste 300, Great River, NY 11739. **Plaintiff must also email a copy of this Order to Defendant the same day it is issued.**

Lastly, Defendant is hereby notified of its right to apply to the Court for modification or dissolution of the TRO on two days' notice to Plaintiff. Fed. R. Civ. P. 65(b)(4).

IT IS SO ORDERED.

Date: March 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11